**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ANTHONY ROLLS,

                      Plaintiff,                    **DECISION AND ORDER**

        -against-                            05 Civ. 7378 (RMB)

PENNSYLVANIA HOTEL, VORNADO
REALTY TRUST, and BILLY LYE,

                      Defendants.
------------------------------------------------------------X

## I.    Introduction

On or about October 18, 2005, pro se plaintiff Anthony Rolls ("Plaintiff" or "Rolls") filed an amended complaint ("Amended Complaint") against the Pennsylvania Hotel ("Hotel"), Vornado Realty Trust ("Vornado"), and Billy Lye ("Lye") (collectively, "Defendants"), alleging race discrimination, religious discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff, who is a Rastafarian and a former employee of the Hotel, claims that, among other things, he was "continuously harassed about [his] hair, job performance, and behavior" after refusing to cut his dreadlocks when directed to do so by the Hotel.[1]  (Amended Complaint at 4, 7.)

On or about February 1, 2006, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), arguing that (1) "[t]he race and retaliation claims are time-barred" and Plaintiff failed to exhaust his

---

[1] Although the Hotel is identified as "Pennsylvania Hotel" in the Amended Complaint, it is properly known as 401 Hotel L.P. d/b/a New York's Hotel Pennsylvania. (Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, dated February 1, 2006 ("Def. Mem.") at 1.) William "Billy" Lye is presently the Director of Security for the Hotel, and was also the Director of Human Resources at the time of Plaintiff's employment. (Def. Mem. at 3.) Vornado "owns the building in which the Hotel operates." (Def. Mem. at 3.)

administrative remedies; (2) Vornado never employed Plaintiff; (3) individuals, such as Lye, cannot be held liable under Title VII; and (4) "[t]he remaining claim of religious discrimination against [the Hotel] is time-barred." (Notice of Motion, dated February 1, 2006; Def. Mem. at 1.)

On or about April 25, 2006, Plaintiff filed an opposition, arguing that (1) the race and retaliation claims are not time-barred because they "are reasonably related to the religious discrimination charge" brought before the Equal Employment Opportunity Commission ("EEOC") on or about April 1, 2003; (2) the claims against Vornado are actionable because "the hotel does not exist without the building"; (3) Lye is not being sued as an individual "but rather in his official position as an agent" of the Hotel; and (4) his "Title VII claim was filed within 90 days of [his] receipt of right to sue letter." (Memorandum of Law in Opposition of Defendants' Motion to Dismiss the Amended Complaint, dated April 25, 2006 ("Pl. Mem."); Affidavit of Anthony Rolls, dated April 25, 2006 ("Rolls Aff.").) On or about June 7, 2006, Defendants filed reply. (See Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, dated June 7, 2006 ("Reply").) Plaintiff a filed sur-reply in the form of a letter to the Court dated June 22, 2006. (See Letter to the Court from Anthony Rolls, dated June 22, 2006 ("Sur-reply").)

**For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.[2]**

## II. Legal Standard

"Any Rule 12(b)(6) movant for dismissal faces a difficult (though not insurmountable) hurdle." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). "Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where 'it appears

---

[2]  The Court is not here ruling upon the merits of Plaintiff's claims.

beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief.'" Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225, 229 (S.D.N.Y. 2000) (quoting Harris, 186 F.3d at 247). "The court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor." Id.

Where, as here, Plaintiff is proceeding pro se, "leniency is generally accorded." Bey v. Human Res. Admin., No. 97 Civ. 6616, 1999 WL 31122, at *2 (E.D.N.Y. January 12, 1999).

### III. Background

The Court treats the following allegations in the Amended Complaint as true for the purposes of this motion. See, e.g., Eastchester Rehab. & Health Care Ctr., L.L.C. v. Eastchester Health Care Ctr. L.L.C., No. 03 Civ. 7786, 2005 WL 887154, at *2 (S.D.N.Y. Apr. 15, 2005) (citing Harris, 186 F.3d at 247):

As a "houseman" for the Hotel, Plaintiff's job was to "deliver anything the guest requested" such as "ashtrays, chairs, desk[s], refrigerators, blankets, pillows [and] towels." (Amended Complaint at 5.)  On or about July 11, 2001, a memorandum was circulated to Hotel employees "explaining effective immediately cornrows and dreadlocks would no longer be permitted to be worn by anyone working for the [Hotel]." (Amended Complaint at 4.)  Upon receiving this memorandum, Plaintiff "immediate[ly] went to [his] boss at the time Ana Martinez and told her [he] was a [R]astafarian and [his] faith forbid [sic] [him] from cutting [his] hair." (Amended Complaint at 4.)  Martinez asked Plaintiff "what's more important [your] hair or [your] job" and told him that he "would have to cut it if [he] wanted to continue working there." (Amended Complaint at 5.)  At the time the memorandum was circulated "only one other [employee of] the hotel had dreadlocks" who "cut her hair and nothing was ever done to her," and "one African American male had cornrows." (Amended Complaint at 5.)

Plaintiff alleges that he did not cut his hair and "[o]ver the next year [] was continually harassed about [his] hair, job performance, and behavior." (Amended Complaint at 5.) Among other things, Plaintiff's "days off were changed repeatedly . . . without [his] knowledge and against local 6 union rules"; he "would sometimes come to work and be told [he] had the day off"; and "was often forced to work 6 or 7 days straight . . . another violation of union rules." (Amended Complaint at 5.) On or about August 12, 2002, approximately one year after being told to cut his dreadlocks, Plaintiff "was called into Billy Lye['s] office . . . and fired for alleged theft from 3 rooms of $50, $150, and $200." (Amended Complaint at 5.)

On or about April 1, 2003, Plaintiff filed a complaint against the Hotel with the New York State Division of Human Rights ("SDHR"), alleging that the Hotel engaged in "an unlawful discriminatory practice . . . because of my religion." (Affidavit of Joann Nelson in Support of Motion to Dismiss ("Nelson Aff."), Exhibit ("Ex.") A.) The SDHR charge was simultaneously filed with the EEOC.[3] (See Nelson Aff. Ex. B.)

On or about April 28, 2004, the SDHR determined that "there is no probable cause to believe that [the Hotel] has engaged in or is engaging in the unlawful discriminatory practice complained of," and "upheld 'just cause' for complainant's discharge in his unauthorized access to the guest's rooms, without determining that he was guilty of any of the alleged thefts." (Nelson Aff. Ex. E.) On or about May 25, 2004, the EEOC, "adopt[ing] the findings of the [SDHR]," issued a "Dismissal and Notice of Rights" which explained Plaintiff's right to commence a federal lawsuit within 90 days ("Right to Sue Notice"). (Nelson Aff. Ex. G.) Rolls filed his initial complaint in this lawsuit on or about June 9, 2005. (See Complaint, dated June 1, 2005.)

---

[3]   Vornado and Lye were not named in the SDHR and EEOC complaints.

4

Rolls alleges that the EEOC mailed the Right to Sue Notice to his "ex-girlfriend['s] house, [but they] had already broken up and she had [an] order from the housing authority that I was never to step foot in her apartment again or she would be evicted." (Amended Complaint at 17.) At the time he filed the SDHR complaint, Plaintiff signed an SDHR "Complainant's Information Sheet" which provided that Rolls was "to notify the [SDHR] of any change in [his] address . . . which may occur during the course of the Division's proceedings." (Nelson Aff. Ex. C.) Rolls maintains that he is "positive that [he] wrote a note . . . letting the [SDHR know] that I moved and provid[ed] my new address[]," but that the Right to Sue Notice was sent to his ex-girlfriend's apartment, and he did not receive it until May, 2005.[4] (Amended Complaint at 7, 17; Rolls Aff. ¶ 5.)

**IV.   Analysis**

**(1)   Race Discrimination and Retaliation Claims**

The United States Court of Appeals for the Second Circuit has "allowed claims not raised in the [EEOC] charge to be brought in a civil action where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Butts v. City of New York Dept. of Housing Pres. and Dev., 990 F.2d 1397, 1402 (2d Cir. 1993) (internal quotation omitted). "In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Williams v. New York City Housing Auth., --- F.3d ----, No. 04-2531-CV, 2006 WL 2086021 (2d Cir. July 19, 2006).

---

[4] Plaintiff's factual allegations concerning the Right to Sue Notice are contained in a letter that is appended to the Amended Complaint. The letter was written in response to an Order dated August 19, 2005 by then Chief Judge Michael B. Mukasey, who was previously assigned to this case, "grant[ing] plaintiff sixty (60) days to amend his complaint to show that he exhausted his administrative remedies with the EEOC." (Order dated August 19, 2005, at 3.)

Because Plaintiff's race discrimination and retaliation claims appear to arise from the same facts as his religious discrimination claim brought before the SDHR, they may be said to be "reasonably related." (See SDHR Complaint No. 1A-E-C-03-2308735-E, Nelson Aff. Ex. A ("I am Rastafarian . . . Respondent distributed a memo on grooming guidelines . . . I told Ms. Martinez that my religion prohibits cutting my hair or shaving my beard . . . I was fired August 15, 2002 [and] [a]nother pretextual reason was given."); Amended Complaint at 4, 5 ("[I] immediate[ly] went to my boss at the time Ana Martinez and told her I was a [R]astafarian and my faith forbid [sic] me from cutting my hair." She asked "what's more important [your] hair or [your] job" and told me that I "would have to cut it if I wanted to continue working there.").) See Gobin v. New York City Health and Hospitals Corp., No. 04 Civ. 3207, 2006 WL 2038621, at *2 n.3 (S.D.N.Y. July 19, 2006) ("Because Plaintiff's claim based on her color stems from the same facts as her other discrimination claims, this Court concludes such claim is reasonably related to the allegations contained in her EEOC charge."); compare McLean-Nur v. Dept. of Transp., City of New York, No. 98 Civ. 819, 2000 WL 297176, at *4 (S.D.N.Y. March 21, 2000) ("Claims alleging discrimination on a completely different theory or basis from those stated in the EEOC charge are not reasonably related to those in the charge."); see also Leibowitz v. Cornell University, 445 F.3d 586 (2d Cir. 2006); Prophete v. Ed Mitchell, Inc., No. 05 Civ. 912, 2006 WL 1668024, at *2 (D. Conn. June 15, 2006) ("Consistent with Leibowitz, the Court will not require plaintiff to establish the prima facie elements of his retaliation claim in his complaint. Plaintiff's complaint is vague, but he has given defendant adequate notice of the nature of his claim. The Court will leave him to his proof on summary judgment.").

**(2)    Vornado**

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Second Circuit has developed a two-part test. "First, the plaintiff must show she was hired by the putative employer," and "to prove that she was hired, she must establish that she received remuneration in some form for her work." U.S. v. City of New York, 359 F.3d 83, 91 (2d Cir. 2004) (internal citations omitted). "This remuneration need not be a salary, but must consist of substantial benefits not merely incidental to the activity performed." Id. (internal quotation omitted). The Court must then "look to the thirteen factors the Supreme Court derived from the federal common law of agency, and articulated in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989), to determine whether an employment relationship exists." Nelson v. Beechwood Organization, No. 03 Civ. 4441, 2004 WL 2978278, at *3 (S.D.N.Y. Dec. 21, 2004).

Plaintiff does not allege that he was employed by Vornado (but only that "[t]he memo came straight from Vornado . . . , down to management[,] then to the employees") nor that he received any remuneration from Vornado. (Amended Complaint at 5.) See Nelson, 2004 WL 2978278, at *3 (finding that where Plaintiff does not allege Defendant remunerated his work, the court "need not consider the thirteen Reid factors."). Thus, dismissal as to Vornado is appropriate.

**(3)    Lye**

"[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus. Inc. v. Ellerth, 524 U.S. 742 (1998); see also Garcia v. New York State, No. 05 Civ. 5138, 2005 WL 2581926, at *2 (S.D.N.Y. Oct. 11, 2005);

Hawkins v. City of New York, No. 99 Civ. 11704, 2005 WL 1861855, at *7 (S.D.N.Y. Aug. 4, 2005). Accordingly, Plaintiff's claims against Lye are dismissed.[5]

**(4)     Plaintiff's Remaining Claims Are Not Time-Barred**

"In order to be timely, a claim under Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter." Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525 (2d Cir. 1996); 42 U.S.C. 2000e-5(f)(1). "This ninety-day period begins to run on the date the claimant actually receives the right-to-sue notice." Chi Ho Lin v. New York City Admin. for Children's Servs., No. 99 Civ. 10314, 2001 WL 964016, *3 (S.D.N.Y. Aug. 23, 2001) (citing Abidekun v. New York City Transit Authority, No. 93 Civ. 5600, 1998 WL 296372, *3 (E.D.N.Y. June 4, 1998)). "When a complaint alleges a late date of receipt, or non-receipt, for purposes of a 12(b)(6) motion, a court must accept the allegations as true, and deny defendant's motion to dismiss for timeliness." Harrison v. New York City Admin. for Children's Servs., No. 02 Civ. 947, 2003 WL 22271219, at *3 (S.D.N.Y. Sept. 30, 2003).

Here, the Right to Sue Notice was mailed on or about May 25, 2004. (Nelson Aff. Ex. G.) Plaintiff filed his initial complaint on or about June 9, 2005 – well beyond the 90-day filing period. (See Complaint, dated June 1, 2005.) Rolls alleges that he "was on Rikers Island at the time [the EEOC mailed the Right to Sue Notice]" and, despite having "let[] the [SDHR know] that [he] moved," the EEOC "sent [the Right to Sue Notice] to [his] ex-girlfriend['s] house, [but] we had already broken up and she had an order from the housing authority that I was never to step foot in her apartment again or she would be evicted." (Amended Complaint at 17.) Rolls further alleges that he did not receive the notice until April of 2005, when his ex-girlfriend gave

---

[5]     Plaintiff's alleges that approximately one year after the "grooming memo" was distributed he "was called into [Lye's] office . . . and fired for alleged theft from 3 rooms." (Amended Complaint at 6.)

8

- 9 -

"all of [his] old mail" to his mother, who then forwarded it to Rolls. (Amended Complaint at 17; Rolls Aff. ¶¶ 5, 16.) See Harrison, 2003 WL 22271219, at *3.

## V.   Decision & Order

For the reasons stated, Defendants' motion to dismiss [12] is granted as to Plaintiff's claims against Vornado and Lye, and is otherwise denied.

The parties are directed to appear at a status/settlement conference with the Court on October 4, 2006 at 10:45 a.m., in Courtroom 14A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007. Defendants are requested to arrange for Plaintiff's appearance by telephone. **The parties are directed to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated: New York, NY
       August 17, 2006

                                    _____
                                    RICHARD M. BERMAN, U.S.D.J.