UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANTHONY ROLLS,

                            Plaintiff,

           -against-

PENNSYLVANIA HOTEL, VORNADO
REALTY TRUST, and BILLY LYE,

                          Defendants.

-----------------------------------------------------------------X

**ORDER**

05 Civ. 7378 (RMB)

## I.    Background

On or about October 18, 2005, pro se plaintiff Anthony Rolls ("Plaintiff" or "Rolls") filed an amended complaint ("Amended Complaint") against the Pennsylvania Hotel ("Defendant" or "Hotel"), alleging race discrimination, religious discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII").[1]   Plaintiff, who is a Rastafarian and a former employee of the Hotel, claims, among other things, that he was "continuously harassed about [his] hair, job performance, and behavior" after refusing to cut his dreadlocks when directed to do so by the Hotel.  (Am. Compl. at 4, 7.)

The following facts are not in dispute:  (i) "Plaintiff began working for the Hotel on July 20, 2000 as a Room Attendant in the Housekeeping Department" (See Def. Rule 56.1 Statement, dated Oct. 24, 2007 ("Def. 56.1"), ¶ 1); (ii) "Plaintiff became a Houseman in early October 2001," and his duties included "responding to guest requests, delivering items to guest rooms,

---

[1]    Although the Hotel is identified as "Pennsylvania Hotel" in the Amended Complaint, it is formally known as 401 Hotel L.P. d/b/a New York's Hotel Pennsylvania. (Defendant's Memorandum of Law in Supp. of S.J., dated Oct. 24, 2007 ("Def. Mem."), at 1.)
    On or about August 17, 2006, the Court dismissed Plaintiff's claims against defendants Vornado Realty Trust and Billy Lye.

and fixing items in guest rooms" (Def. 56.1 ¶¶ 2–3); (iii) "[o]n or about July 19, 2001, the then

Director of Housekeeping, Ana Martinez ["Ms. Martinez"], issued a [written] dress code policy

to all housekeeping employees" ("July 2001 Memo"), providing, among other things, that "all

Housemen must have a clean-shaven face" and "all Housemen must keep hair neat—no dye,

braids, bandanas, or hats while on duty" (Def. 56.1 ¶¶ 9–10); (iv) "Plaintiff testified that, upon

receiving the July 19, 2001 memo, he approached Ms. Martinez to inform her that his religion

(Rastafarian) prevented him from cutting his hair" (Def. 56.1 ¶ 11); (v) "Plaintiff continued to

work for the Hotel from July 19, 2001 to August 13, 2002, while wearing a beard and

dreadlocks" and "no supervisor ever spoke to him about the policy again" (Def. 56.1 ¶¶ 12–13);

and (vi) at an August 20, 2002 meeting with Plaintiff and his Union delegate, the Hotel's

Directory of Security and Labor Relations, Billy Lye ["Lye"], concluded that "Plaintiff had

entered . . . three guest rooms [from which money was reportedly stolen] without authorization

or a business purpose" and "Mr. Lye notified Plaintiff that the Hotel was terminating his

employment effective immediately" (Def. 56.1 ¶¶ 48–49).[2]

---

[2]    "Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern
and Eastern Districts of New York . . . requires a party moving for summary judgment to submit
a statement of the allegedly undisputed facts on which [it] relies, together with citation to
admissible evidence of record supporting each such fact." Giannullo v. City of New York, 322
F.3d 139, 140 (2d Cir. 2003). "[I]f the opposing party fails to respond to the moving party's
Local Rule 56.1 statement, as [Rolls] has failed to do here, then the material facts contained in
the moving party's statement are deemed admitted as a matter of law." See Chitoiu v. UNUM
Provident Corp., No. 05 Civ. 8119, 2007 WL 1988406, at *1 (S.D.N.Y. July 6, 2007) (applying
Rule 56.1 to a pro se plaintiff).
    In connection with Defendant's motion for summary judgment, Defendant notified Rolls
that if he does not "respond to the motion for summary judgment on time with affidavits or
documentary evidence contradicting the material facts asserted by the Defendant, the Court may
accept Defendant's factual assertions as true . . . [and] judgment may then be entered in
Defendant's favor without trial." (See Not. to Pro Se Litigant Who Opposes a Mot. for S.J.,
dated Oct. 24, 2007, at 2); see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373
F.3d 241, 246 (2d Cir. 2004) ("notice must advise pro se litigants who oppose summary

On or about October 24, 2008, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), arguing, among other things, that (1) "Plaintiff cannot establish a prima facie case of discrimination"; and (2) "there is no evidence that the Hotel's reason for terminating Plaintiff was a pretext for discrimination." (Def. Mem. at 14, 21.)

On or about February 4, 2008, Plaintiff filed an opposition ("Opposition"), arguing, among other things, that (1) Plaintiff "can make a prima facie case for all of [his] claims even though [he does not] have to"; and (2) the "Hotel's reason for [Plaintiff's] termination was a pretext for discrimination" because "[o]nce it was known by the Hotel that [Plaintiff] would not comply with the hair memo, the decision was made to fire [him]." (Opp. at 2, 9, 43, 62.)  On or about February 29, 2008, Defendant filed reply brief ("Reply").  On or about March 15, 2008, Plaintiff a filed sur-reply in the form of a letter to the Court ("Sur-Reply").

**For the following reasons, Defendant's motion for summary judgment is granted.**

## II.     Legal Standard

"Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). "[I]n ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant." Id. "[A]n extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., 445 F.3d 597, 603 (2d Cir. 2006) (internal

---

judgment that the claims . . . in [the] complaint may be dismissed without a trial if [the pro se party] do[es] not respond to [the] motion") (internal quotation and citation omitted).

citations omitted). However, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Id.

In a discrimination action, "the employee bears the initial burden of producing evidence sufficient to support a prima facie case of discrimination." Sgarlata v. Viacom, Inc., Nos. 02 Civ. 7234 & 03 Civ. 5228, 2005 WL 659198, at *4 (S.D.N.Y. Mar. 22, 2005). The burden then "shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action." Farias v. Instructional Sys., 259 F.3d 91, 98 (2d Cir. 2001).

When the party opposing summary judgment is pro se, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation and citation omitted). "By the same token, however, a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Thompson v. Tracy, No. 00 Civ. 8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan. 17, 2008) (internal quotation omitted).

## III.   Analysis

### (1)   Prima Facie Case of Discrimination

Defendant argues that "Plaintiff cannot establish that he actually suffered an adverse employment action" and his "unsubstantiated allegations are insufficient to support an inference of discrimination" because, among other things, "Plaintiff's list of workplace gripes—even taken together—do not meet his prima facie burden"; "the Hotel terminated Plaintiff's employment for entering guest rooms without authorization over one year after he claims he informed Ms. Martinez that his religious beliefs prevented him from complying with the Hotel's dress code policy"; "Ms. Martinez was not involved in Plaintiff's termination"; and "there is no evidence

- 4 -

that Mr. Lye was aware of either Plaintiff's religious beliefs or his refusal to comply with the July 2001 Memo until after the termination." (Def. Mem. at 14–15, 17–18.)

Plaintiff argues, among other things, that he suffered adverse action by experiencing "schedule changes," "uneven workload," and "questions from co-workers"; "it is obvious to anyone who saw [Plaintiff] with [his] hair and dreadlocks . . . that [he] did not comply with the [July 2001] Memo"; and "that memo and [Plaintiff's] non-compliance with it was on everyone's mind during the [allegedly insufficient] investigation of these alleged thefts . . . and during [his] termination." (Opp. at 19, 33, 40–44.)

To establish a prima facie case of discrimination, Plaintiff must show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under the circumstances giving rise to an inference of discriminatory intent." Feingold v. City of New York, 366 F.3d 138, 152 (2d Cir. 2004). Plaintiff's "[c]onclusory allegations, conjecture, and speculation" regarding the third and forth factors "are insufficient to create a genuine issue of fact." See Shannon v. New York City Transit Authority, 332 F.3d 95, 99 (2d Cir. 2003).

First, Plaintiff provides no evidence that he sustained a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "Plaintiff testified that after he refused to shave and cut his hair, the Hotel began changing his schedule," which "resulted in him occasionally being the only Houseman on his shift." (Def. 56.1 ¶¶ 75, 81.) At the same time, Plaintiff conceded that "his total hours worked did not necessarily change as a result of the schedule changes." (Def. 56.1 ¶ 77.) Plaintiff's changes in assignments or work-related duties did not constitute adverse employment actions because, among other things, they were unaccompanied by a decrease in salary or work

hour changes. See Staff v. Pall Corp., 233 F. Supp. 2d 516, 531 (S.D.N.Y. 2002). Plaintiff also

claims that Ms. Martinez would occasionally comment to him that he "would look much better

with all that hair off [his] head" and other non-supervisor employees "asked Plaintiff if he

planned to cut his hair." (Def. 56.1 ¶¶ 85–86.) Such "stray remarks . . . by non

decisionmakers . . . [and] by decisionmakers unrelated to the decisional process are not by

themselves sufficient to satisfy [P]laintiff's burden." See Burrell v. Bentsen, No. 91 Civ. 2654,

1993 WL 535076, at *8 (S.D.N.Y. Dec. 21,1993) (internal quotations omitted); see also Bern v.

United Mercantile Agencies, 942 F. Supp. 217, 220 (S.D.N.Y. 1996) ("Many courts have held

that stray remarks in the workplace, by themselves, and without a demonstrated nexus to the

complained of personnel actions, will not defeat the employer's summary judgment motion.").

Second, and assuming, arguendo, that Plaintiff were able to demonstrate that he suffered

an adverse employment action, he cannot show "circumstances giving rise to an inference of

discriminatory intent." See Shannon, 332 F.3d at 99. Plaintiff "acknowledges that he and Ms.

Martinez had only one conversation about the Hotel's dress code policy" in July 2001 and that

"Ms. Martinez never disciplined him in any way." (Def. 56.1 ¶¶ 84, 87.) Ms. Martinez was not

involved in Plaintiff's termination, and, in fact, was no longer employed by the Hotel when

Plaintiff was terminated on August 20, 2002. (Def. 56.1 ¶¶ 52, 90.) Mr. Lye was not aware of

either Plaintiff's religious beliefs or his refusal to comply with the July 2001 Memo when he

terminated Plaintiff on August 20, 2002, more than a year after Plaintiff informed Ms. Martinez

that his Rastafarian beliefs prevented him from cutting his hair. (Def. 56.1 ¶ 53.) Plaintiff

offers no evidence from which a reasonable jury could find that Mr. Lye's decision to terminate

Plaintiff was causally connected to Plaintiff's alleged complaints to Ms. Martinez. See Clark

County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("temporal proximity between an

employer's knowledge of protected activity and an adverse employment action . . . must be 'very close'"); see also Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

**(2)      Termination as Pretext for Discrimination**

Assuming, arguendo, that Plaintiff were able to establish a prima facie case of discrimination, Plaintiff does not show that the reason for his termination was a pretext for discrimination.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 469 (2d Cir. 2001) (Plaintiff bears burden "to come forward with evidence that the employer's proffered explanations were merely pretextual and that the actual motivations more likely than not were discriminatory").

Defendant argues, among other things, that "[t]here is no evidence that the Hotel's stated reason for terminating Plaintiff's employment [i.e. Plaintiff's unauthorized presence in guest rooms when cash was reported stolen] is false" and "Plaintiff cannot adduce evidence that would permit a reasonable factfinder to conclude that his race or religion was the 'real reason' for any alleged action against him." (Def. Mem. at 22.)  Plaintiff counters, among other things, that "[t]he Hotel's own investigation . . . failed to substantiate any crime [Plaintiff] was alleged to have committed" and he "was punished for . . . [his] sincere[ly] held religious beliefs." (Opp. at 71-72.)

Plaintiff was terminated after three Hotel guests reported that cash was stolen from their rooms when they were not present on July 4, 2002, July 12, 2002, and August 11, 2002.  (Def. 56.1 ¶¶ 21-28.)  In each instance, the Hotel's electronic security system register "showed that Plaintiff had entered the room [at or about the time of the alleged theft] with the master key he

signed out earlier in the evening." (Def. 56.1 ¶¶ 17, 29–42.)  At an August 20, 2002 meeting, "Mr. Lye shared with Plaintiff and [his] Union [delegate] the information he had learned regarding the three reported thefts and asked Plaintiff to explain his presence in the guest rooms." (Def. 56.1 ¶¶ 43–53.)  "Plaintiff offered no explanation for his presence" in two of the rooms and "claimed that he was fixing a shade" in the other room, "but neither he nor the Hotel could locate any record of such work." (Def. 56.1 ¶¶ 43–53.)  Plaintiff "denied taking any money from Hotel guests," but "did not deny entering each of the guest rooms." (Def. 56.1 ¶¶ 43–53.)  At that August 20, 2002 meeting, "Mr. Lye notified Plaintiff that the Hotel was terminating his employment effective immediately." (Def. 56.1 ¶ 49.)

Defendant has put forth a non-discriminatory reason for Plaintiff's termination, which Plaintiff has not rebutted.  "[T]he material issue is whether [Defendant's] decision to terminate him was made on a reasonable basis." See Welland v. Citigroup, Inc., No. 00 Civ. 738, 2003 WL 22973574, at *7 (S.D.N.Y. Dec. 17, 2003).  "The record establishes that [Defendant] did indeed conduct an appropriate investigation into Plaintiff's activities and that the decision to terminate him was reasonable in light of the facts collected and the [Hotel's] internal policies." See id.  Plaintiff's assertion that the Hotel's investigation was improper and that he was terminated for his religious beliefs, "without . . . factual support, amounts to nothing more than speculation and surmise." See Gray v. Robert Plan Corp., 991 F. Supp. 94, 103 (E.D.N.Y. 1998); see also Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997).

## IV.    Conclusion

For the reasons stated above, Defendant's motion for summary judgment [#43] is

granted.  The Clerk is respectfully request to close this case.

Dated: New York, NY
      May 7, 2008

$RMB$

_____

**RICHARD M. BERMAN, U.S.D.J.**